this case on the docket 2-13-9319, the people of the state of Illinois, Plaintiff Kelly v. Jamie Valle, Defendant of the Court, arguing on behalf of the Defendant of the Court, Attorney Mr. Rishal Raval, arguing on behalf of the Plaintiff Kelly, Attorney Ms. Diane L. Kim. Good morning. Mr. Rishal, you can step forward. Good morning, Your Honors. Good morning, Counsel. My name is Anish Raval. I represent the Defendant in this case, Jaime Valle. The sole issue that we're presenting for review is whether the Aurora Police Department in this case exceeded the scope of the search warrant when they searched a detached garage at the property that Mr. Valle owned at 216 Southeast Avenue in Aurora, Illinois. What was the scope of the search warrant? Your Honor, I believe the scope of the search warrant was limited only to the residents. And why did it get there? How did it get there? Your Honor, by reading the language of what was authorized in the search warrant. And specifically, it states it's described as a two-story split-level single-family residence that's light blue in color with a white trim. The front door of the residence is white in color with the windows and faces white. So you think everything else is just merely a description of the home? Your Honor, I do. And in the conclusion of that description, it seems clear. It says the structure is located on the northeast corner of Southeast Avenue and North Avenue in Aurora. But the line before that, it describes the large detached garage. That's correct, Your Honor. It describes a large detached garage. It states that there were wrought iron railings leading to the front door. It describes a number. It says there were concrete steps going up to the front of the house. Regardless of whether or not the warrant described the garage, the garage was clearly within the curtilage of the home, correct? Your Honor, the trial court did not determine whether it was in the curtilage, but I believe the argument can be made. We can affirm for any basis supported by the record. Yes, I would state that. A depiction of the home is in the record. Correct. I believe there's a map showing the exact premises, correct? That is correct. The United States Supreme Court in the United States versus Dunn, and our court in several cases, McNeil, Pittman, and other cases adopting Dunn's analysis, affords the curtilage the same protection of the home, correct? Correct. So why should we treat, and most of the cases involving analysis of the curtilage concept are where there's misbehavior by the police entering onto the curtilage to make observations, which they then put into a warrant to search the premises. Correct. Why should we treat curtilage any differently when police are acting without a warrant than when they're acting with a warrant? In other words, if they have a warrant to search the home that is, as a matter of law, under Pittman, McNeil, citing the United States versus Dunn-McCarty, all these cases saying a warrant to search the home is a warrant to search the curtilage as well because we afford Fourth Amendment protection to the curtilage because it's part of the home. Why is that analysis not appropriate here? Because I believe… Which would mean that freeing it is not good law. No, Your Honor. I'm not suggesting that. What I am suggesting, however, is that the description in this particular warrant is specifically for the residence. Unlike if they… What if they just did describe it as a residence or premises? They just said the home at. Your Honor, if it were a general phrase encompassing something like premises or property, I would say that everything located on that premises or at that property would be included. Would you agree that we're not supposed to be wordsmiths? This is a common sense approach. I… And a police officer, McCarty, the Supreme Court, the Illinois Supreme Court said, a police officer with this warrant in hand, would a reasonable police officer believe he has authority to search that area? The answer would be what? Your Honor, in this specific search warrant, I would suggest that the residence is what the police officers authorized to search. I believe a police officer reading this would believe he would be authorized to search the residence. You have the Supreme Court saying, the United States Supreme Court and our Supreme Court, both of which have said, the search warrant for a home includes the cartilage. Your Honor, I'm not disputing that. I'm not disputing that. The only thing that I'm suggesting, and it's also suggested in the case that I cited in our briefs, U.S. v. Lange, is that, and they quote, and I'm quoting now at page 945, that's 370F sub 2nd at 945. The court there, it's a district court, admittedly out of North Dakota, states, if, however, the shed was part of the cartilage, as the agent believed, a new warrant should have been obtained to authorize the search of the shed. Since the warrant authorizing the agents to be on the property only permitted a search of the house. And that is what I'm suggesting has happened here, that that warrant is specifically for the house, the shed is, even if I concede the fact that the garage is part of the cartilage. I understand what you're saying. However, in this warrant, the information in the warrant also has the suspect leaving in a vehicle, presumably from the garage. So a police officer with this knows that the cocaine or heroin, I think it was for heroin, correct? It's for cocaine. Cocaine. Doesn't end up there by being dropped off by a drone. It's probably transported there, correct? But also in the affidavit for the search warrant, all of the bystate place at the front, at the front door. Absolutely correct. In United States v. Dunn, the dissenting justices talked about the practice in most jurisdictions, because in Dunn, the barn was outside the cartilage. But in this case, the dissenting justices in Dunn talked about the practice in most jurisdictions. And there's a long list of cases from other jurisdictions where if you have a search warrant for a home, that includes the search of outbuildings within the cartilage. How is that different than the circumstance here? Your Honor, I would argue in most of the cases, including the cases cited by the trial judge, the cases cited by counsel, they talk about the premises to be searched. It's hyper-technical. That's hyper-technical. Your Honor, if a search warrant authorized the specific search of the kitchen of a home, that would technically be permitted. If somebody were to then search the garage that's located on the property, I would submit to you that that would be an illegal search. I think it can be limited to a specific area, and I think in this particular case, the warrant is limited to the residence. I think they could have clearly stated if they wanted to search the premises, they probably would have been able to get a warrant for the entire premises. But that is not, I would argue, that is not what has happened. Other than Freeman, do you have another Illinois case that supports your view? In addition to Longy, the case that I cited? Well, is Longy an Illinois case? It is not an Illinois case. My question is, an Illinois case with precedential value? There was an Illinois case actually cited by my counsel here that's People v. Taylor. It's a 3rd District case. In that case, the search warrant also read that it was for the premises, and they went on to suggest, and this is at 563 Northeast 2nd at 515. They stated the warrant was not limited to defendant's home or residence, but specifically stated premises, a word which has been construed to include all buildings at the address listed. Residence, home, residence, premises, the United States Supreme Court and the Illinois Supreme Court don't make that fine distinction you're talking about here. If you have a search warrant for the home, it includes the curtilage. By the same token, if a police officer illegally enters onto the curtilage, the homeowner has protection of the Fourth Amendment for observations made by that officer where he's not a welcome guest. And he's not there for some lawful purpose, which is what Jardine says. My question to you is, why should we treat curtilage differently when the police are acting with a warrant than when they're acting without a warrant? Does that make any sense at all? Would that discourage police from getting search warrants? To interpret it that way? I don't know if it would discourage police to get search warrants, although I do know that if they wanted a search warrant for the premises, they could simply have asked for it. The language, there's a distinction to be made. Longie makes the distinction. The case People v. Taylor I just cited for you, I believe there's a Seventh Circuit case as well that is based on the idea that premise includes all of the outlying buildings on the property. Because that is the way that the term is actually defined. But in those cases, they didn't list specifically another piece of property or another building like they did in this case, where they list a large detached garage. Your Honor, that is correct, but they also list numerous other things as well. And it all seems to point towards the structure. They describe the whole property. They describe the residence. They describe the garage. And it is under, if you look at the warrant, it's underneath the language, persons and places to be searched, colon, and then the whole description. The residence, the garage is particularly describing, which is what the Fourth Amendment says, the places to be searched. And your view is that that only refers to the residence. The other language is superfluous, correct? The other language is included so that the officers know which structure they are authorized to search. But they know that. I mean, there is numerous cases just saying that the number, the street number, and the house address is sufficient. All that other description is unnecessary unless it's authorized in search of the entire residence or, quote, unquote, premises. You suggested it should have read premises. If it had said premises, we would have been okay. That's all they had to do was just interchange premises for residence, and they would have been fine. I think legally, supported by case law, premises includes all of the outlying buildings. I believe that residence, when you're speaking of specific residence, there's a distinction to be made. And all of the language, the way that I'm reading, and, of course, the way that I am arguing this, and you are free to interpret it as you will, which I'm sure you will. I am arguing that the residence here describes the actual residence. Everything else there is not superfluous. It is there to show the police officers where this house is actually located, that they are authorized to search. If the Illinois Supreme Court and the United States Supreme Court had not adopted the Dunn analysis and afforded protection of the curtilage the same protections as the home. It's treated the same way. Let me ask you this. Justice Burkett just suggested that an address alone is sufficient. All the other descriptors really don't matter. And if that's true, then wouldn't just the description of 216 Southeast Avenue, Aurora, Kane County, Illinois, 60505. That alone, is that more equivalent to premises or residence? If it did not describe it as either a residence or premises, it just authorized the search of the address. I think if that were the case, then it would be more analogous to stating that the property can be searched. The property at the address, it's all encompassing. Okay. So this is my scenario. And we're stuck with the way these warrants are written. I mean, we don't get to rewrite them or say, gee, it would have been better if you had said this or that. But right after the zip code is the word described as. So following the logic of your argument that, you know, 216 Southeast Street described as a two-story split-level family residence. And therefore, the warrant would be limited to that split-level residence to the exclusion of everything else. If I back up a few more words and just look at 216 Southeast Street, Aurora, Kane County, Illinois, zip code. And then the next word is described as so that arguably everything that follows after the word described, two words described as, is simply to make sure that we all are speaking about the same 216 Southeast Avenue. And if it's just the address, isn't that the premises or at least, if you will, the residence plus its curtilage? I would think that just 216 Southeast Avenue would be a broader description of what is authorized to be searched. I think that in some ways this is limiting because it is specifically written in here that is the residence. It's repeated three times in this. And at the end, it finalizes this description by detailing where this structure is located. And I believe that that language authorizes the search then of the residence. If it were just the property, if it just said 216 Southeast Avenue and then just listed there's a tree in the yard and there's a fence there or something else, that would equate more to property and premises. Would it have mattered if it had started out with the residence located at 216 Southeast Avenue, Aurora, Illinois? Would it have made a difference? As far as whether they were talking about a residence or whether they were talking about the entire property, I don't think so. I think that if it started off as the residence located at or the way that it's written here, which is a little bit difficult to describe as a two-story, split-level, single-family residence, that's describing the portion of the property that they are permitted to search. That is our position. So is it dispositive how it's described or do we look back at the probable cause to issue the warrant in the first place? And is the scope of the warrant tied more to the description? All that follows after 216 Southeast Street? Or is the scope really defined by the affidavit's probable cause? I would say that the particularity requirement in the Fourth Amendment states that what is to be searched has to be spelled out in the warrant. So I think it would have to be contained in the warrant itself. Justice Shastick had a question as well. I stole your time. No, that's okay. Just real briefly. At trial, the defendant admitted that the garage was his, correct? Correct. And at the time, an investigator asked him, didn't he give the investigator a passcode to get into the garage? Right. When the defendant left, he was arrested on the street as they were executing the search warrant on his home, and he did give them the passkey and he did give them the keys to his home. I have one more question. Okay. In the trial court, you argued People v. Freeman, but you didn't cite it in your brief. I did not. And why not? Your Honor, the trial attorney was a different attorney. But you read the record. I read the record. And you read Freeman. Yes. Freeman would support your position. Why not cite it? Your Honor, I thought that the argument in cases that we cited made a stronger argument. Okay. Thank you, counsel. Thank you. Good morning, Ms. Kim. Good morning, Your Honors. I'm going to address the main issue. I did become aware while preparing for the argument of something else that was not briefed by the parties, so I'd like to reserve two minutes quickly at the end to bring that to the Court's attention. The documents at issue are all in the defendant's appendix, so it makes it easy to refer to them if you have any questions. In the search warrant, it refers to the place to be searched, and then it lists the address first, and then it gives a description of the house and a description of the attached garage. On the second page of the search warrant, in subsection 6, it authorizes looking for indices of residency, ownership, and possession of the above address. That is a consistent pattern of the information in the complaint for the search warrant, which are at A6 and 7 in the defendant's appendix, and the affidavit for the search warrant, which are A8 to 10 in the defendant's appendix. In particular, in the affidavit for the search warrant, it refers to at 615 Southeast Avenue or the area of that, and on page 3 of the affidavit, which is at A10, it believes that the search of 216 Southeast Avenue. The totality of what the documents say indicate that the search is for the entire premises. But doesn't the complaint for the warrant allege that the illegal drugs and related items are located in the residence? No. It refers to the address, and then it notes that the particular transactions do take place in the house, but it repeatedly refers to the address 216 and the area of that. So your position is that a reasonable police officer with that warrant in hand looking for drugs would obviously search both the home and the garage, regardless of whether or not they've already recovered some garage or something in the garage or something in the home. They're going to conduct a complete search for the premises as the warrant directs, correct? Yes, particularly. Oh, sorry. And that's what the Supreme Court has said? Yes. Would a reasonable police officer with that warrant in hand believe that he has authority to search that area? Correct. Particularly with, I believe it was you that noted that the defendant is stopped at a traffic stop in his vehicle, which presumably came out of the garage. So, again, the garage is a logical place. It's been noted, well, in both Van Matre and Gordon, which I cite in my brief, the courts go for the reasonable interpretation. In Bennett, the court talks about the common sense and practical, not overly technical, interpretation of the warrant. Let me ask you this question. Let's say you have a judge who is going to review this warrant and decide, or the complaint for search warrant, decide whether they're going to issue the warrant or not. How are they able to limit the scope of a warrant if we take the position that residence, home, premises, property, address all means you could search the entire curb? How can a trial judge who's reviewing the complaint say, you know, I think you've only got probable cause to get in the garage, for example? I think he could simply write on the face of the warrant right here on the first page where it lists the address and then describes the house and just say only house and, you know, say not garage. Certainly the trial court is well capable of restricting or limiting a search warrant. That's not an unusual practice. If you're looking for a car engine, you're not going to look in the basement or in the bedroom. You're going to look in the garage. Here they're looking for drugs, which could be in both places, correct? Correct. My point is how do we communicate to trial judges? Do you have to use the word only? Do you have to use restrictive language? Well, I have a little trouble with that because I think in this case there wasn't any reason to restrict it to just the house. Well, that's your opinion. When you get a black rope. Okay. My point is how do we say to trial judges? A trial judge may have looked at this and said 216 Southeast, the residence located at and said, okay, that's what I think I'm communicating. I think I'm giving you authority to search the residence. How do we communicate to trial judges what it is you need to say so that we're not parsing words on review? Well, I think definitely you should find in this case that the search warrant authorized. Perhaps then note that if the trial court meant to restrict it to just the residence, he should have specified that in the warrant. The restriction is in the Fourth Amendment, reasonable or probable cause to believe the items might be found. So if there's no probable cause the items might be found, judge's obligation is to confine the warrant to just those areas where it could be found, correct? Correct. That's not the point. I think the trial judge understands what its obligation is, but if we're taking the position that no matter kind of what word you use, premises, home, residence, house located, it all needs the full curtilage. What words do we tell a trial judge to use to so limit it? I think then you just advise the trial judge that if you wish to restrict the warrant, then no, it is only for the residence. You know, here we have the description. You just said only the residence means the whole thing. But will the next step be that house means premises, means curtilage? Do you see the slippery slope here? I do, but I think that since there is a detailed description of the attached garage, that that is, and certainly that gave the trial court the opportunity to hear to restrict it. How do we know that that wasn't just simply a description to make sure we get the right 216 South E Street? That's the name of the street? Because they describe the fence, don't they? We're not searching the fence. I think in this case we look at, there's the whole curtilage. Is that what gets us into the garage? Is it the curtilage or is it the description? It's both. I don't think it's either or. Certainly when you're looking at the sufficiency of the description, one of the things you're looking at is the curtilage and what the court considers the appropriate potential search area. In this case, since both the house is described and the detached garage is explicitly described, certainly it would be the reasonable interpretation that both of those structures are included. Just as reasonable, they describe the lamppost, they describe the fence, the garage. Aren't they just descriptors? No. I think in this case, again, the logic and common sense and not hypertechnical examination of the warrant indicates that you can go ahead and search the fence post, but you're probably not going to find the cocaine there unless, I don't know, you hollowed out or something. It is a logical decision that since they particularly describe the detached garage and it's part of the curtilage, that that is part of what they are seeking authorization to search. Sometimes they'll say detached garage or house with brown shutters and white spouting. Why are they describing that? Is it so that they get the right house or is it so they know which house to search? I think it's both. In this case, they give a very detailed description of the property and what's on the address. Logically, it describes the wrought iron fence railing and it describes two driveways and a tall white fence in the yard. Why do you think they're describing that? I think it's just an over-exuberance of description to make sure that it's easily identified as the proper address. They're not going on more than the streets. So over-exuberance is a substitute for problem of cause? No, but I don't think that they should be punished for trying to be detailed. So it's the curtilage that gets you in to the garage? Again, I think it's both. The protections of the Fourth Amendment extend to the home and the curtilage. Correct. And that's been repeated, repeated, repeated. And in the overwhelming majority of jurisdictions, a search for the home includes a search for the outbuildings within the curtilage, whether or not they're named in the warrant. Correct? Correct. In the trial court, the defense cited Freeman. They don't cite it here. But why shouldn't we follow Freeman? Where in Freeman, a police officer is taking or relieving himself alongside the garage and looks through the window with the aid of a light and sees the contraband. And this court said that that was an unconstitutional search because the police officer had no right to be relieving himself alongside the garage and looking into the garage. Why shouldn't we follow Freeman? It's our case from our court. I believe that the other cases, I cite a Supreme Court case in my brief at page five. And that describes the curtilage as the area extends to intimate activity associated with the sanctity of the home and the privacies of life. I think the garage certainly fits within that. It's included in this description. I would distinguish this case from the Longy case cited by opposing counsel because in that case, it said the resident and didn't include a description of the shed where the rifle was found. And one of the owners stated that the shed belonged to, I believe, her grandmother or her aunt, who is not a resident of the property. So, you know, that's very distinguishable. And that is why, you know, in that case, it was not included because it wasn't included in the description and it wasn't part of the daily activities. Here, the defendant admitted it was his garage. He said he had some personal items. The officer testified that there was a refrigerator, a freezer, a filing cabinet, I believe a chair in the garage. So it is, you know, associated with his daily activities. The officer, when he did the stop, got the key to the house from the defendant. And then he also asked him if the garage had a separate key. And the defendant provided him with a passcode in order to get into the garage. So clearly that was off Detective Stennett. And he is the one who prepared the warrant. So I think that's a clear indication that he, when he was filling out the warrant and seeking the warrant, was going both for the house and the garage. As Justice Burkett noted, the defendant was stopped in his car after he presumably had pulled the car out of the garage. So, you know, I think under all logic and the reasonable interpretation is that the search warrant, which said the place and then listed the address and then gave a description detailed of both the house and of the detached garage, you know, on its face and with the case law that the detached garage was included. Now, I don't want to feed a dead horse, but I'm going to ask you this question again. If this search warrant did not include a description of the detached garage, would the detached garage have fallen within the cartilage during the search warrant? Yes, it would. So as I pointed out, this comes in both under cartilage and under the detailed description where it is named in the search warrant. You know, on both those issues, it's properly included for the subject of the search. I'd like to briefly address the issue that I noted when I was preparing for this argument in the defendant's brief. Also in the appendix is a copy of his notice of appeal. Since I did not raise this in a motion to dismiss the appeal, it's at A-16 in his appendix and in C-251 in the record. Since I did not raise it in a motion to dismiss and I did not raise it while briefing, it could be considered forfeited by the state. Forfeiture is merely a restriction on the parties, not this court. And this court always has a duty to examine its jurisdiction. To hear a case, if you'll note on line five, it says the date of the judgment or order being appealed is December 6, 2013. And the ruling being appealed from is the sentence. That is, in fact, the correct date for the sentencing. Defendant raises no issues regarding the sentence in his brief. He merely appeals the motion to suppress and, therefore, the jury verdict. In Peeble v. Gutierrez, which I found after just a brief amount of research, which is 212 Illinois 111590, the court discusses that even though notices of appeal are to be construed liberally, this court held that no matter how liberally it construed the defendant's notice of appeal, it cannot fairly and adequately be read as encompassing the trial court's order of a different date. So I apologize to the court for not having raised that. I did not have an opportunity to mention it to my opposing counsel until just before the argument, so he had no ability to respond or prepare a response. So I apologize to all of you for having failed to raise that. But I did feel that since you have a duty to examine your jurisdiction as office of court, I should bring it to your attention. What is it? I didn't get my pen. Gutierrez is 2012 Illinois 111590, and it starts about head note 9. So based on the case law and the face of the document, we ask that you affirm the trial court's decision on the search warrant and the defendant's conviction. Thank you. Mr. Russo. Your Honors, I don't have anything to add to what I've already said. I will acknowledge the fact that the notice of appeal says what it says. As far as the waiver issue, whether Your Honors have jurisdiction over this case or not, I have not done any research on that, so I'm not aware of that issue and I'm not going to present a position on that. But it should be one more opportunity. If we are going to look at that and if we determine we're going to decide anything based on that, we will give you an opportunity to do that if necessary. Anything further? I have nothing further. Thank you very much. Ms. Campbell, thank you very much for your arguments. Both of you, you've been nothing but professional. We appreciate that. We will render a decision in due course and the court will be in recess until our next oral argument. Thank you both. Take travels back.